Frederick J. Klorczyk III (SBN 320783)
**KAMBERLAW, LLC**
305 Broadway, Suite 713
New York, NY 10007
Telephone: (646) 964-9604
Facsimile: (212) 202-6364
E-Mail: fklorczyk@kamberlaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYDNEY HEATH and CHELSEA SANTIAGO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>NATALS, INC. d/b/a RITUAL,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Sydney Heath and Chelsea Santiago ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Natals, Inc. (d/b/a Ritual) ("Ritual" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action lawsuit against Ritual for cheating customers by selling multivitamins that promise to provide "Essential" nutrition but fail to contain a number of vitamins that are essential. Ritual markets its product line under the "Essential" name including the Essential for Women Multivitamin 18+, Essential for Women Multivitamin 50+, Essential for Men Multivitamin 18+, and Essential for Men Multivitamin 50+ (collectively, the "Essential Multivitamins" or "Products") while omitting numerous vitamins that the National Institutes of Health ("NIH") and the U.S. Food and Drug Administration ("FDA") classify as essential.

2. According to the NIH, "there are 13 essential vitamins – vitamins A, C, D, E, K, and the B vitamins (thiamine, riboflavin, niacin, pantothenic acid, biotin, B6, B12, and folate)" (hereinafter, the "13 Essential Vitamins").[1]

3. The FDA has likewise identified these same 13 vitamins as essential. "The term 'essential nutrient' under the fortification policy refers to the vitamins and minerals assigned Reference Daily Intakes (RDIs) listed in 21 CFR 101.9(c)(8)(iv)[.]"[2] In turn, 21 C.F.R. 101.9(c)(8)(iv) establishes RDIs, nomenclature, and units of measure for the "vitamins and minerals which are essential in human nutrition," including the 13 Essential Vitamins.

---

[1] *See* National Institutes of Health, Vitamins and Minerals for Older Adults, https://www.nia.nih.gov/health/vitamins-and-supplements/vitamins-and-minerals-older-adults (last visited May 29, 2026); *see also* National Center for Complementary and Integrative Health, Vitamins and Minerals, https://www.nccih.nih.gov/health/vitamins-and-minerals (last visited May 29, 2026).

[2] *See* Questions and Answers on FDA's Fortification Policy, Guidance for Industry, https://www.fda.gov/media/94563/download (last visited May 29, 2026).

4. The newly released Dietary Guidelines for Americans, 2025-2030 published January 7, 2026 by the U.S. Departments of Health and Human Services and Agriculture further reinforce the importance of these essential vitamins, recommending that Americans prioritize "nutrient-dense foods" and noting that many Americans fail to obtain adequate levels of key vitamins and minerals from their diets.[3]

5. Despite this clear and consistent guidance from the NIH, FDA, and the Dietary Guidelines regarding the 13 Essential Vitamins, each of the Essential Multivitamins fails to contain multiple essential vitamins, as set forth in detail below. And yet, the Products are voluntarily labeled as being "Essential" Multivitamins. Reasonable consumers would expect the Products to provide all 13 vitamins the NIH and FDA deem to be "essential." Even worse, the Products' labeling fails to expressly state that the Products do not provide all essential vitamins and nutrients or otherwise disclose that the Products are missing numerous essential vitamins.

6. Plaintiffs therefore assert claims on behalf of themselves and a nationwide class of purchasers of the Essential Multivitamins. Plaintiff Heath also seeks relief in this action individually and on behalf of purchasers of the Products in the State of California for violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*. Plaintiff Santiago also seeks relief in this action individually and on behalf of purchasers of the Products in the State of New York for violation of New York General Business Law ("GBL") § 349, New York's Deceptive and Misleading Business Practices Law, and GBL § 350, New York's False Advertising Law.

7. Plaintiffs also seek relief in this action individually and on behalf of all purchasers of the Products against Defendant for breaches of express warranty, unjust enrichment, and quasi-contract.

---

[3] *See* Dietary Guidelines for Americans, 2025-2030, available at https://cdn.realfood.gov/DGA.pdf (last visited May 29, 2026).

**THE PARTIES**

8. Plaintiff Sydney Heath is a natural person and citizen of the State of California, residing in San Francisco, California. Prior to filing this action, Plaintiff purchased one or more of the Ritual Essential Multivitamins, including the Essential for Women Multivitamin 18+, from Amazon.com on or about October 12, 2025, for approximately $27.52. Prior to her purchase, Plaintiff reviewed the labeling, packaging, and/or marketing materials for the Products and saw the representations that the Products are "Essential" Multivitamins. Plaintiff understood these claims to be representations and warranties by Defendant that the Essential Multivitamins contain all the vitamins that the human body absolutely needs, *i.e.*, all 13 vitamins the NIH and FDA deem essential. Plaintiff reasonably relied on these representations when she purchased the Products. However, the Essential Multivitamins lack numerous vitamins that the NIH and FDA deem essential. Plaintiff relied on these representations and warranties in deciding to purchase the Products, and these representations were part of the basis of the bargain, in that she would not have purchased the Essential Multivitamins if she had known that they were not, in fact, "Essential" Multivitamins that provide all of the vitamins that regulatory authorities classify as essential. Plaintiff also understood that in making the sale, the retailer was acting with the knowledge and approval of, and/or as the agent of, the manufacturer. Plaintiff also understood that her purchase involved a direct transaction between herself and the manufacturer, because her purchase came with packaging and other materials prepared by the manufacturer, including representations and warranties that the Products are "Essential" Multivitamins.

9. Plaintiff Chelsea Santiago is a natural person and citizen of the State of New York, residing in Wappingers Falls, New York. Prior to filing this action, Plaintiff purchased one or more of the Ritual Essential Multivitamins, including the Essential for Women Multivitamin 18+, from Amazon.com on or about September 12, 2025, for approximately $36.98. Prior to her purchase, Plaintiff reviewed the labeling, packaging, and/or marketing materials for the Products and saw the representations that the Products are "Essential" Multivitamins. Plaintiff understood these claims to be representations and warranties by Defendant that the Essential Multivitamins contain

all the vitamins that the human body absolutely needs, *i.e.*, all 13 vitamins the NIH and FDA deem essential. Plaintiff reasonably relied on these representations when she purchased the Products. However, the Essential Multivitamins lack numerous vitamins that the NIH and FDA deem essential. Plaintiff relied on these representations and warranties in deciding to purchase the Products, and these representations were part of the basis of the bargain, in that she would not have purchased the Essential Multivitamins if she had known that they were not, in fact, "Essential" Multivitamins that provide all of the vitamins that regulatory authorities classify as essential. Plaintiff also understood that in making the sale, the retailer was acting with the knowledge and approval of, and/or as the agent of, the manufacturer. Plaintiff also understood that her purchase involved a direct transaction between herself and the manufacturer, because her purchase came with packaging and other materials prepared by the manufacturer, including representations and warranties that the Products are "Essential" Multivitamins.

10. Defendant Natals, Inc. (d/b/a Ritual) is a Delaware corporation with its principal place of business at 1370 N St Andrews Place, Los Angeles, California 90028. As part of its operations, Defendant is engaged in the formulation, manufacturing, packaging, distribution, marketing, labeling, and/or sale of the Essential Multivitamins throughout California and the entire United States, including through its website ritual.com and through retail channels such as Target, Walmart, Amazon, and Ulta Beauty.

## **JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed Class is a citizen of a state different from Defendant. Defendant is a citizen of Delaware (its state of incorporation) and California (its principal place of business).

12. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in the State of California, and has continuous and systematic contacts with the State of California as to essentially render it "at home" in this State. Moreover, Defendant

has purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of Defendant's forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State.

13. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff Heath resides in this District and a substantial portion of the events that gave rise to Plaintiff Heath's claims occurred in this District. *See also* Declaration of Sydney Heath Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached as Ex. A.

## FACTS COMMON TO ALL CLAIMS

### A. There Are 13 Essential Vitamins

14. According to the National Institutes of Health, "there are 13 essential vitamins—vitamins A, C, D, E, K, and the B vitamins (thiamine, riboflavin, niacin, pantothenic acid, biotin, B6, B12, and folate)."[4]

15. The FDA likewise recognizes these same 13 vitamins as essential. According to FDA Guidance, "[t]he term 'essential nutrient' under the fortification policy refers to the vitamins and minerals assigned Reference Daily Intakes (RDIs) listed in 21 CFR 101.9(c)(8)(iv)[.]"[5]

16. 21 C.F.R. 101.9(c)(8)(iv) establishes RDIs, nomenclature, and units of measure for the "vitamins and minerals which are essential in human nutrition," including the 13 Essential Vitamins A, C, D, E, K, and the B vitamins (thiamine, riboflavin, niacin, pantothenic acid, biotin, B6, B12, and folate).[6]

17. The Dietary Guidelines for Americans, 2025-2030, released on January 7, 2026, continue to recognize the importance of these essential vitamins, recommending that Americans

---

[4] *See* https://www.nia.nih.gov/health/vitamins-and-supplements/vitamins-and-minerals-older-adults (last visited May 29, 2026); *see also* https://www.nccih.nih.gov/health/vitamins-and-minerals (last visited May 29, 2026).

[5] *See* Questions and Answers on FDA's Fortification Policy, Guidance for Industry, https://www.fda.gov/media/94563/download (last visited May 29, 2026).

[6] *See* https://www.ecfr.gov/current/title-21/chapter-I/subchapter-B/part-101/subpart-A/section-101.9 (last visited May 29, 2026, current as of May 22, 2026).

obtain adequate amounts of vitamins and minerals through a nutrient-dense dietary pattern and, where necessary, through dietary supplementation.[7]

**B. Despite Being Marketed As "Essential" Multivitamins, The Products Do Not Contain All 13 Essential Vitamins**

18. All of the Essential Multivitamins at issue are substantially similar. All varieties are manufactured by or for Ritual and sold under the "Essential" brand name. Moreover, the labels for the Essential Multivitamins are substantially similar in their use of the word "Essential" to describe and market the Products. Despite the NIH's and FDA's clear guidance, none of the Essential Multivitamins contain all 13 essential vitamins. Nor do the Products' labels expressly state that the Products are "incomplete" or otherwise disclose that the Products do not contain certain essential vitamins.

19. The Essential for Women Multivitamin 18+ prominently represents that it is an "Essential" Multivitamin. The Product's packaging and labeling are depicted below:




**Essential for Women Multivitamin 18+**

**Instructions:** For women 18+. Take two capsules together daily, with or without food.

**Supplement Facts**

**Serving Size:** Two (2) Vegan Capsules
**Servings Per Container:** 30

| | Amount Per Serving | %DV |
|---|---|---|
| Vitamin D (as cholecalciferol¹) [from Lichen (whole plant)] | 50 mcg (2000 IU) | 250% |
| Vitamin E (as alpha tocopherol from mixed tocopherols) [from *Brassica napus* (seed)] | 6.7 mg | 45% |
| Folate (as 6S-5-Methyltetrahydrofolate [glucosamine salt]) | 1000 mcg DFE | 250% |
| Vitamin B12 (as methylcobalamin) | 8 mcg | 333% |
| Iron (as ferrous bisglycinate) | 8 mg | 44% |
| Magnesium (as dimagnesium malate) | 30 mg | 7% |
| Omega-3 Docosahexaenoic Acid (DHA) Fatty Acids [from *Schizochytrium* spp. (whole microalgae)] | 330 mg | ** |
| Boron (as calcium fructoborate) | 0.7 mg | ** |
| Vitamin K2 (as Menaquinone-7) | 90 mcg | ** |

** Daily Value (DV) not established.

**Other Ingredients:** Beadlets (cellulose, Non-GMO corn zein), stomach acid-resistant vegan capsule (hypromellose, gellan gum), silica.

¹Vitashine™ lichen

[7] *See* https://cdn.realfood.gov/DGA.pdf (last visited May 29, 2026).

20. According to the Product's Supplement Facts panel, the Essential for Women Multivitamin 18+ contains the following vitamins: Vitamin D3, Vitamin E, Folate, and Vitamin B12, along with minerals and other ingredients such as Iron, Vitamin K2, Magnesium, Boron, and Omega-3 DHA.

21. The Essential for Women Multivitamin 18+ fails to contain the following eight (8) of the 13 Essential Vitamins: Vitamin A, Vitamin C, Vitamin B1 (Thiamine), Vitamin B2 (Riboflavin), Vitamin B3 (Niacin), Vitamin B5 (Pantothenic Acid), Vitamin B6, and Vitamin B7 (Biotin).

22. The Essential for Women Multivitamin 50+ prominently represents that it is an "Essential" Multivitamin. The Product's packaging and labeling are depicted below:




**Essential for Women Multivitamin 50+**
**Instructions:** For women 50+ or post-menopause.
Take two capsules together daily, with or without food.

**Supplement Facts**

**Serving Size:** Two (2) Vegan Capsules
**Servings Per Container:** 30

| | Amount Per Serving | %DV |
|---|---|---|
| Vitamin D (as cholecalciferol[1]) [from Lichen (whole plant)] | 50 mcg (2000 IU) | 250% |
| Vitamin E (as alpha tocopherol from mixed tocopherols) [from Brassica napus (seed)] | 10 mg | 67% |
| Folate (as 6S-5-Methyltetrahydrofolate [glucosamine salt]) | 200 mcg DFE | 50% |
| Vitamin B12 (as methylcobalamin) | 16 mcg | 667% |
| Magnesium (as dimagnesium malate) | 60 mg | 14% |
| Omega-3 Docosahexaenoic Acid (DHA) Fatty Acids [from Schizochytrium spp. (whole microalgae)] | 330 mg | ** |
| Boron (as calcium fructoborate) | 0.7 mg | ** |
| Vitamin K2 (as Menaquinone-7) | 100 mcg | ** |

** Daily Value (DV) not established.

Other Ingredients: Beadlets (cellulose, Non-GMO corn zein), stomach acid-resistant vegan capsule (hypromellose, gellan gum), silica.

[1]Vitashine™ lichen

23. According to the Product's Supplement Facts panel, the Essential for Women Multivitamin 50+ contains the following vitamins: Vitamin D3, Vitamin E, Folate, Vitamin B12, and Biotin (B7), along with minerals and other ingredients.

24. The Essential for Women Multivitamin 50+ fails to contain the following seven (7) of the 13 Essential Vitamins: Vitamin A, Vitamin C, Vitamin B1 (Thiamine), Vitamin B2 (Riboflavin), Vitamin B3 (Niacin), Vitamin B5 (Pantothenic Acid), and Vitamin B6.

25. The Essential for Men Multivitamin 18+ prominently represents that it is an "Essential" Multivitamin. The Product's packaging and labeling are depicted below:




**Essential for Men Multivitamin 18+**

**Instructions:** For men 18+. Take two capsules together daily, with or without food.

**Supplement Facts**

**Serving Size:** Two (2) Vegan Capsules
**Servings Per Container:** 30

| | Amount Per Serving | % DV |
|---|---|---|
| Vitamin A (as retinyl palmitate) | 180 mcg RAE | 20% |
| Vitamin D (as cholecalciferol[1]) [from Lichen (whole plant)] | 50 mcg (2000 IU) | 250% |
| Vitamin E (as alpha tocopherol from mixed tocopherols) [from *Brassica napus* (seed)] | 6.7 mg | 45% |
| Folate (as 6S-5-Methyltetrahydrofolate [glucosamine salt]) | 200 mcg DFE | 50% |
| Vitamin B12 (as methylcobalamin) | 8 mcg | 333% |
| Magnesium (as dimagnesium malate) | 30 mg | 7% |
| Zinc (as zinc bisglycinate) | 2.4 mg | 22% |
| Omega-3 Docosahexaenoic Acid (DHA) Fatty Acids [from *Schizochytrium* spp. (whole microalgae)] | 330 mg | ** |
| Boron (as calcium fructoborate) | 0.7 mg | ** |
| Vitamin K2 (as Menaquinone-7) | 90 mcg | ** |

** Daily Value (DV) not established.

**Other Ingredients:** Beadlets (cellulose, NON-GMO corn zein), stomach acid-resistant vegan capsule (hypromellose, gellan gum), silica.

[1]Vitashine™ lichen

26. According to the Product's Supplement Facts panel, the Essential for Men Multivitamin 18+ contains the following vitamins: Vitamin A, Vitamin D3, Vitamin E, Vitamin K2, Folate, and Vitamin B12, along with minerals and other ingredients such as Zinc, Magnesium, Boron, and Omega-3 DHA.

27. The Essential for Men Multivitamin 18+ fails to contain the following seven (7) of the 13 Essential Vitamins: Vitamin C, Vitamin B1 (Thiamine), Vitamin B2 (Riboflavin), Vitamin B3 (Niacin), Vitamin B5 (Pantothenic Acid), Vitamin B6, and Vitamin B7 (Biotin).

28. The Essential for Men Multivitamin 50+ prominently represents that it is an "Essential" Multivitamin. The Product's packaging and labeling are depicted below:




**Essential for Men Multivitamin 50+**

**Instructions:** For men 50+. Take two capsules together daily, with or without food.

## Supplement Facts

**Serving Size:** Two (2) Vegan Capsules
**Servings Per Container:** 30

| | Amount Per Serving | %DV |
|---|---|---|
| Vitamin A (as retinyl palmitate) | 180 mcg RAE | 20% |
| Vitamin D (as cholecalciferol[1]) [from Lichen (whole plant)] | 50 mcg (2000 IU) | 250% |
| Vitamin E (as alpha tocopherol from mixed tocopherols) [from *Brassica napus* (seed)] | 10 mg | 67% |
| Folate (as 6S-5-Methyltetrahydrofolate [glucosamine salt]) | 200 mcg DFE | 50% |
| Vitamin B12 (as methylcobalamin) | 16 mcg | 667% |
| Magnesium (as dimagnesium malate) | 60 mg | 14% |
| Zinc (as zinc bisglycinate) | 2.4 mg | 22% |
| Omega-3 Docosahexaenoic Acid (DHA) Fatty Acids [from *Schizochytrium* spp. (whole microalgae)] | 330 mg | ** |
| Boron (as calcium fructoborate) | 0.7 mg | ** |
| Vitamin K2 (as Menaquinone-7) | 100 mcg | ** |

** Daily Value (DV) not established.

**Other Ingredients:** Beadlets (cellulose, NON-GMO corn zein), stomach acid-resistant vegan capsule (hypromellose, gellan gum), silica

[1]Vitashine™ lichen

29. According to the Product's Supplement Facts panel, the Essential for Men Multivitamin 50+ contains the following vitamins: Vitamin A, Vitamin D3, Vitamin E, Vitamin K2, Folate, and Vitamin B12, along with minerals and other ingredients.

30. The Essential for Men Multivitamin 50+ fails to contain the following seven (7) of the 13 Essential Vitamins: Vitamin C, Vitamin B1 (Thiamine), Vitamin B2 (Riboflavin), Vitamin B3 (Niacin), Vitamin B5 (Pantothenic Acid), Vitamin B6, and Vitamin B7 (Biotin).

31. In sum, every one of the Essential Multivitamins is missing at least seven of the 13 Essential Vitamins identified by the NIH and FDA. Notably, none of the Products contain Vitamin C – one of the most widely recognized and commonly supplemented essential vitamins. The foregoing representations that the Products are "Essential" Multivitamins, when in fact they omit numerous vitamins the NIH and FDA classify as essential, are collectively referred to herein as

the "Misrepresentations." Indeed, even if a reasonable consumer were to review the Supplement Facts portion on the back of the labels, he or she would not have any reason to know or suspect that the Products did not have all of the vitamins the NIH and FDA deem to be "essential."

## CLASS DEFINITION AND CLASS ALLEGATIONS

32. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves, on behalf of all others similarly situated, and as members of the Classes defined as follows (collectively, the "Class"):

> All citizens of the United States who, within the relevant statute of limitation periods, purchased one or more of the Products ("Nationwide Class").
>
> All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products ("California Subclass").
>
> All citizens of New York who, within six years prior to the filing of the initial Complaint, purchased Defendant's Products ("New York Subclass").

33. Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

34. Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

35. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

36. **Numerosity:** Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and Subclasses number in the hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

37. **Common Questions Predominate:** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

- Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;
- Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;
- Whether Defendant made false and/or misleading statements to the Class and the public, including the Misrepresentations;
- Whether the Essential Multivitamins contain the 13 vitamins that the NIH and FDA deem to be essential;
- Whether the Misrepresentations are likely to deceive the public;
- Whether Defendant violated (i) California Bus. & Prof. Code § 17200, et seq.; (ii) Cal. Bus. & Prof. Code § 17500, et seq.; and/or (iii) the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.;
- Whether Defendant violated New York General Business Law §§ 349 and 350;
- Whether Defendant committed a breach of express warranty;
- Whether Plaintiffs and the Class members are entitled to equitable and/or injunctive relief;

- Whether Plaintiffs and the Class members have sustained damage as a result of Defendant's unlawful conduct;
- The proper measure of damages sustained by Plaintiffs and Class members;
- Whether Defendant was unjustly enriched by its deceptive practices; and
- The proper measure of damages sustained by Plaintiffs and the Class.

38. **Typicality:** The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs purchased Essential Multivitamins in reliance on the Misrepresentations and suffered a loss as a result of that purchase.

39. **Adequacy:** Plaintiffs are adequate representatives of the Class and the Subclasses because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

40. **Superiority and Substantial Benefit:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.

41. Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

42. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or facts common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

43. Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT I

**Violation of California's Unfair Competition Law**
**(California Business and Professions Code §§ 17200, *et seq.*)**
**(On behalf of Plaintiff Heath and the California Subclass)**

44. Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

45. Plaintiff Heath brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

46. Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

47. Plaintiff Heath brings this claim seeking restitution or disgorgement of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct, as described herein.

48. Defendant's knowing conduct, as alleged herein, constitutes a "fraudulent" and/or "unfair" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

***Defendant's Conduct Constitutes a Fraudulent Business Practice***

49. Defendant's conduct constitutes a fraudulent business practice because, as set forth herein, consumers are likely to be deceived by Defendant's Misrepresentations that the Products are "Essential" Multivitamins providing all essential vitamins.

50. Defendant was and is aware that its Misrepresentations are material to consumers.

51. Defendant was and is aware that its Misrepresentations are misleading, as described herein.

52. Defendant had an improper motive – to derive financial gain at the expense of accuracy or truthfulness – in its practices related to the labeling and advertising of the Products.

53. There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

54. Defendant's conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

***Defendant's Conduct Constitutes an Unfair Business Practice***

55. Defendant's conduct violates the Immoral Test because Defendant intentionally makes the Misrepresentations to increase sales of the Products.

56. Defendant was and is aware that its Misrepresentations are misleading, as described herein.

57. Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's Misrepresentations.

58. Defendant's conduct also violates the "Balancing Test" because the utility of Defendant's conduct in labeling the Products with the Misrepresentations is outweighed by the harm to consumers.

59. As set forth herein, the "Essential" representations on the Products are optional, voluntary advertising statements.

60. Defendant makes the Misrepresentations to increase sales of the Products and to the detriment of consumers, who are misled and deceived.

61. Consumers are directly harmed by Defendant's conduct in that they would not have purchased the Products if they had known the truth.

62. Defendant's conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions.

63. In addition, Defendant's conduct is injurious to competition because Defendant's misrepresentation of its Products prevents consumers from making an informed choice between its Products and other similar products, which are not misrepresented.

64. Defendant had an improper motive – to derive financial gain at the expense of accuracy or truthfulness – in its practices related to the labeling and advertising of the Products.

65. There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

66. Plaintiff Heath and members of the California Subclass could not have reasonably avoided injury. Defendant's Misrepresentations regarding the Products were likely to deceive, and Defendant knew or should have known that its Misrepresentations were misleading.

67. Plaintiff Heath purchased the Products with the reasonable belief that the Essential Multivitamins contain all the vitamins the human body absolutely needs, including all 13 vitamins the NIH and FDA classify as essential, and without knowledge that the Products in fact omit numerous vitamins the NIH and FDA classify as essential.

***Defendant's Conduct Constitutes an Unlawful Business Act***

68. Defendant's misrepresentation of material facts, as set forth herein, also constitutes an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.

69. Defendant's conduct in making the Misrepresentations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.

70. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

71. Plaintiff Heath and members of the California Subclass could not have reasonably avoided injury. Defendant's uniform, material Misrepresentations regarding the Products were

likely to deceive, and Defendant knew or should have known that its Misrepresentations were untrue and misleading.

72. Plaintiff Heath and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff Heath and California Subclass members.

73. As a result of the business acts and practices described above, Plaintiff Heath and members of the California Subclass are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

74. Pursuant to Civil Code § 3287(a), Plaintiff Heath and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff Heath and the California Subclass are entitled to interest in an amount according to proof.

75. With respect to restitution under the UCL claim, Plaintiff Heath alleges in the alternative that Plaintiff Heath and California Subclass members lack an adequate remedy at law for the reasons already alleged above.

**COUNT II**
**Violation of California's Consumers Legal Remedies Act**
**(California Civil Code §§ 1750, *et seq.*)**
**(On behalf of Plaintiff Heath and the California Subclass)*)***

76. Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

77. Plaintiff Heath brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

78. Plaintiff Heath brings this action pursuant to California's CLRA, Cal. Civ. Code § 1750, *et seq*.

79. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

80. The Products are "goods," as defined by the CLRA in California Civil Code § 1761(a).

81. Defendant is a "person," as defined by the CLRA in California Civil Code § 1761(c).

82. Plaintiff Heath and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code § 1761(d).

83. Purchases of the Products by Plaintiff Heath and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code § 1761(e).

84. Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, … uses [or] benefits … which [they] do not have" by making the Misrepresentations, as described herein.

85. Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade … if they are of another" by making the Misrepresentations, as described herein.

86. In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented as described herein.

87. Defendant's uniform Misrepresentations regarding the Products were likely to deceive, and Defendant knew or should have known that its Misrepresentations were deceptive and/or misleading.

88. Plaintiff Heath and members of the California Subclass relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

89. Plaintiff Heath and members of the California Subclass were unaware of the existence of facts that Defendant suppressed and failed to disclose, namely that the Products omit numerous vitamins the NIH and FDA classify as essential.

90. Defendant's omissions were material because a reasonable consumer would consider whether a multivitamin marketed as "Essential" in fact contains all the vitamins regulatory authorities classify as essential to be important when deciding whether to purchase the Products.

91. Plaintiff Heath and members of the California Subclass would not have purchased the Products had they known the truth about the Products.

92. Plaintiff Heath and members of the California Subclass have been directly and proximately injured by Defendant's conduct.

93. Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at which they were offered.

94. Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers, including to increase the sale of the Products.

95. Pursuant to California Civil Code § 1782(a), on November 13, 2025, Plaintiff Heath, on her own behalf and on behalf of members of the California Subclass, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by notice letter setting forth Plaintiff Heath's claims.

96. As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiff Heath and members of the California Subclass request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

97. Despite giving Defendant more than 30 days from the date of the notification letter and original Class Action Complaint to provide appropriate relief for violations of the CLRA, Defendant has failed to provide any such relief. As such, Plaintiff Heath seeks compensatory, monetary and punitive damages, and requests that this Court enter such Orders or judgments as

may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

98. With respect to restitution under the CLRA claim, Plaintiff Heath alleges in the alternative that Plaintiff Heath and California Subclass members lack an adequate remedy at law for the reasons already alleged above.

**COUNT III**
**Violation of California's False Advertising Law**
**(California Business and Professions Code §§ 17500, *et seq*.)**
**(On behalf of Plaintiff Heath and the California Subclass)**

99. Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

100. Plaintiff Heath brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

101. California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .."

102. Defendant violated § 17500 when it represented, through the Misrepresentations, that the Products possess characteristics and value that they do not have, namely that the Products are "Essential" Multivitamins that contain all the vitamins the NIH and FDA classify as essential.

103. Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiff Heath to purchase the Products.

104. Defendant's uniform, material Misrepresentations regarding the Products were likely to deceive, and Defendant knew or should have known that its uniform Misrepresentations were untrue and/or misleading.

105. Plaintiff Heath purchased the Products in reliance on the Misrepresentations made by Defendant, including that the Products are "Essential" Multivitamins that contain all the vitamins the NIH and FDA classify as essential.

106. Plaintiff Heath and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff Heath and California Subclass members.

107. The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

108. In making the Misrepresentations alleged herein, Defendant knew or should have known that the Misrepresentations were deceptive and/or misleading, and acted in violation of § 17500.

109. As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff Heath and members of the California Subclass request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interest and attorneys' fees.

110. With respect to restitution under the FAL claim, Plaintiff Heath alleges in the alternative that Plaintiff Heath and California Subclass members lack an adequate remedy at law for the reasons already alleged above.

**COUNT IV**
**Violation of New York's Unfair and Deceptive Trade Practices Act**
**(New York Gen. Bus. Law § 349)**
**(On behalf of Plaintiff Santiago and the New York Subclass)**

111. Plaintiff Santiago incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

112. Plaintiff Santiago brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

113. This claim is brought pursuant to the laws of the State of New York.

114. Plaintiff Santiago and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

115. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

116. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

117. Defendant made false and misleading statements by marketing the Products as "Essential" Multivitamins, when the Products omit numerous vitamins the NIH and FDA classify as essential.

118. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

119. Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products in fact contain all the vitamins the NIH and FDA classify as essential.

120. Defendant's deceptive acts and practices were directed at consumers.

121. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts and practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents that the Products are "Essential" Multivitamins containing all essential vitamins.

122. Plaintiff Santiago and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the Misrepresentations, as described herein. As a result, Plaintiff Santiago and New York Subclass members have been damaged either in the full amount of the purchase price of the

Products or in the difference in value between the Products as warranted ("Essential" Multivitamins containing all essential vitamins) and the Products as actually sold (Multivitamins missing numerous essential vitamins).

123. On behalf of herself and other members of the New York Subclass, Plaintiff Santiago seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

**COUNT V**
**False Advertising**
**(New York Gen. Bus. Law § 350)**
**(On behalf of Plaintiff Santiago and the New York Subclass)**

124. Plaintiff Santiago incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

125. Plaintiff Santiago brings this claim individually and on behalf of the New York Subclass against Defendant.

126. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

127. New York General Business Law Section 350-a(1) defines false advertising as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

128. Defendant's labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendant advertised the Products as "Essential" Multivitamins when in fact the Products omit numerous vitamins the NIH and FDA classify as essential.

129. Plaintiff Santiago understood Defendant's Misrepresentations to mean that the Products in fact contained all the vitamins the NIH and FDA classify as essential, as reasonable consumers understand the term.

130. Defendant's Misrepresentations are consumer-oriented and were and are likely to mislead reasonable consumers acting reasonably under the circumstances.

131. Defendant's Misrepresentations have resulted in consumer injury or harm to the public interest.

132. As a result of the Misrepresentations, Plaintiff Santiago and New York Subclass members have suffered economic injury because: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the Misrepresentations, as described herein. As a result, Plaintiff Santiago and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

133. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff Santiago and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## COUNT VI
**Breach of Express Warranty**
**(On behalf of Plaintiffs and the Classes)**

134. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

135. Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendant.

136. Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products are "Essential" Multivitamins that contain all the vitamins the NIH and FDA classify as essential.

137. Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiffs and members of the Class and Subclasses.

138. However, the Products do not conform to Defendant's representations and warranties because the Products omit numerous vitamins the NIH and FDA classify as essential. By falsely representing the Products in this way, Defendant breached express warranties.

139. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and members of the Class and Subclasses have been injured and harmed in an amount to be proven at trial. Had Plaintiffs and members of the Class and Subclasses known the Products did in fact omit numerous vitamins the NIH and FDA classify as essential, they would not have purchased the Products, or would have paid substantially less for them.

140. Prior to filing the initial complaint in this action, Defendant was served via certified mail with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313 and 2-607.

## COUNT VII
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Classes)**

141. Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

142. California law permits unjust-enrichment claims where restitution or disgorgement is sought to prevent a defendant from retaining ill-gotten gains resulting from the sale of an unlawful or misrepresented product.

143. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendant.

144. To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

145. Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiffs and Class Members paid for the Products.

146. Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

147. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because the Products omit numerous vitamins the NIH and FDA classify as essential. This caused injuries to Plaintiffs and Class members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

148. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

149. Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

150. Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

151. As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered in an amount to be proven at trial.

152. Plaintiffs and putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

153. Plaintiffs and putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## COUNT VIII
## Quasi-Contract
## (On behalf of Plaintiffs and the Classes)

154. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

155. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendant.

156. By purchasing the Products, Plaintiffs and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

157. Defendant has knowledge of such benefits.

158. Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

159. Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefits were obtained by Defendant's Misrepresentations and unlawful conduct.

160. Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the expense of Plaintiffs and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the Nationwide Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclasses;

b. For an order declaring the Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs, the Class, and the Subclasses on all counts asserted herein;

d. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper;

h. For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit;

i. Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

j. For such other and further relief as the Court may deem proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: June 2, 2026

Respectfully submitted,

/s/ *Frederick J. Klorczyk III*
Frederick J. Klorczyk III (SBN 320783)
**KAMBERLAW, LLC**
305 Broadway, Suite 713
New York, NY 10007
Tel: 646.964.9604
Fax: 212.202.6364
Email: fklorczyk@kamberlaw.com

*Attorneys for Plaintiffs and the Proposed Classes*